UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

THUAN HAN TANG,

    Petitioner,

    v.

BRIAN ENGLISH,

    Respondent.

CAUSE NO. 3:26cv203 DRL-SJF

OPINION AND ORDER

Immigration detainee Thuan Han Tang, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Tang filed a reply. The petition is ready to be decided.

Mr. Tang entered the United States entered the United States in 1981 as a refugee. From 1992 to 2009, Mr. Tang was convicted on multiple occasions on charges including robbery, aggravated assault, theft, and possession of crack cocaine. On November 7, 2000, an immigration judge ordered him removed, but he was released on an order of supervision in 2001. In 2009, United States Immigration and Customs Enforcement (ICE) detained him again but released him on an order of supervision after ninety days. On June 10, 2025, ICE detained him a third time, and he is currently held at the Miami Correctional Facility.

According to the petition, the government was unable to remove Mr. Tang to Vietnam during his detention in 2000-2001 and in 2009. Mr. Tang also alleges that Vietnam has consistently refused to issue travel documents for individuals like him who entered the

United States before July 12, 1995. He references a 2008 treaty between the United States and Vietnam, which does not require Vietnam to accept such individuals, and the Memorandum of Understanding from November 2020, which created a process for requesting travel documents for individuals who entered the United States before July 12, 1995, but allows Vietnam to refuse such requests. He further cites statistical reports that indicate that, from September 2021 to September 2023, Vietnam accepted only four individuals who entered the United States before 1995 for removal.

On March 12, 2026, the respondent represented that the government intends to remove Mr. Tang to Vietnam but that it was unlikely that he would be removed within the next 30 days. On April 6, 2026, an ICE official attested that, on March 11, 2026, "Petitioner's travel document request was submitted to HQ Removal and International Operations for processing" [10-2 at 3].

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Tang's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Tang ended more than two decades ago. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer — what the statute calls inadmissible aliens (under 8 U.S.C.

§ 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] Given his criminal convictions, Mr. Tang's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments" — such as the status of repatriation negotiations —

are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is another period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his past detention and releases years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Tang has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the respondent identifies Vietnam as the only country under consideration for removal. The government was unable to remove him to Vietnam during his detention in 2000-2001 and in 2009. His most recent term of detention now spans nearly eleven months. In the petition, Mr. Tang also references the historical reluctance of Vietnam to accept individuals who entered the United States before 1995 for removal. Reports have been mixed on this front. Numerous habeas petitions in the context of immigration seem to have revealed that repatriation to Vietnam for pre-1995 immigrants faces unique headwinds, notwithstanding a 2020 Memorandum of Understanding between the United States and Vietnam, though another record for one petition reported greater success, even for pre-1995 immigrants. The court must decide each petition based on the record the parties provide. The court finds that Mr. Tang met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

To rebut this showing, the respondent represents that the government intends to remove Mr. Tang to Vietnam and that the government has sent an application for travel documents to internal headquarters for processing. This proffer doesn't demonstrate that Mr. Tang's removal is likely to occur within the reasonably foreseeable future. It does not explain why efforts to remove Mr. Tang will be successful now when the government's prior efforts were unsuccessful and given Vietnam's history of refusing to repatriate individuals

who entered the United States prior to 1995. It also does not adequately explain why travel documents have not yet been obtained after eleven months of detention or why a request for travel documents has not yet been submitted to Vietnam. It does not provide any insight as to when Vietnam might reach a decision once a formal request has been submitted or the likelihood that Vietnam will issue travel documents. Unlike other petitions, the government remained tight-lipped here about its success in repatriating Vietnamese citizens, *see, e.g.,* *Huynh v. English*, 2026 U.S. Dist. LEXIS 86051, 10-11 (N.D. Ind. Apr. 17, 2026), and the court must rule based on the record before it. The government does not rest on the status of repatriation negotiations, or even suggest there are any that merit particular deference. In short, the government has not shown a likelihood of Mr. Tang's removal in the reasonably foreseeable future. Therefore, the respondent must release Mr. Tang under *Zadvydas*. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

For these reasons, the court:

(1) GRANTS the petition for writ of habeas corpus [1] and ORDERS the respondent to release Thuan Han Tang on the same conditions of supervised release that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **May 5, 2026**;

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release; and

(3) ORDERS that any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

May 4, 2026                          _s/ Damon R. Leichty_
                                    Judge, United States District Court